No. 84-360

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

IN THE MATTER OF INQUIRY
S.L.T., Youth in Need of Care.

_____

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Custer,
The Honorable A. B. Martin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

George T. Radovich, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Keith D. Haker, County Attorney, Miles City, Montana
J. Dennis Corbin, Deputy County Atty., Miles City

_____

Submitted on Briefs: Dec. 20, 1984

Decided: March 28, 1985

Filed: MAR 28 1985

*Ethel M. Harrison*

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The parents of S.L.T. appeal from an order of the District Court of the Sixteenth Judicial District, Custer County, Montana, the Honorable A. B. Martin presiding, finding that S.L.T. is an abused and neglected child; granting temporary custody of S.L.T. to the Custer County Department of Public Welfare; and requiring that S.L.T. and her parents follow a treatment plan submitted by Custer County Department of Public Welfare and adopted by the court. We affirm.

In August 1983, S.L.T., a fifteen year old, was stopped by a police officer and taken into custody for unauthorized use of a vehicle. She told the officer that she needed the car in order to get to the bus depot and leave town. Her reasons for wanting to leave were that she was creating a problem between her adoptive father, J.T. and her mother, L.T., and that she had been sexually abused by J.T.

S.L.T. was placed under the supervision of Juvenile Probation and, with her parents' consent, was sent to the Youth Evaluation Program in Great Falls, Cascade County, Montana. During her interviews there she revealed the details of her sexual abuse. The Great Falls Police Department also took a statement from her about the abuse at the request of Cascade County Child Protective Services. The interview reports and the statement of the police were forwarded to Custer County Welfare Office and formed the basis for a Petition for Temporary Investigative Authority filed on September 21, 1983.

Several instances of sexual abuse were alleged in the interview reports and statements. These occurred when S.L.T. accompanied her father on business trips. They slept in the same motel room and the same bed. J.T. molested S.L.T. by

2

fondling her breasts and rubbing the inside of her thighs. The mother permitted S.L.T. to accompany the father on these trips and miss school because of her inability to control S.L.T. and her disbelief that such activity would occur.

As a result of the petition, the District Court signed an Order for Protective Services and Order to Show Cause on September 21, 1983. The order gave the Custer County Department of Public Welfare authority to place S.L.T. in temporary care, to require S.L.T. and her parents to have medical and/or psychological evaluations and receive counseling, and the right of entry by a peace officer or social worker. The order also appointed Joe L. Hegel, an attorney, as counsel and guardian ad litem for S.L.T. and set a hearing for October 3, 1983.

Following the hearing, the District Court granted temporary investigative authority and custody of S.L.T. to Custer County for a period of six months. This order was issued October 11, 1983 and based on a finding that S.L.T. was in danger of being abused and neglected. Four months later J.T. and L.T. moved for a new hearing on the custody of S.L.T. The motion was denied after a hearing on March 19, 1984 on the grounds that it was premature. At this time the District Court also ordered that S.L.T. and her parents undergo an evaluation by a psychologist and a psychiatrist as part of the investigation by Custer County. This order was entered on the basis of an agreement by the parties.

S.L.T. received her evaluation but her parents did not appear for their appointment. On April 2, 1984, the judge issued an order to show cause why J.T. and L.T. should not be found in contempt for their failure to appear for the appointment and scheduled a hearing for April 23, 1984. This failure to appear also prompted the county attorney's office to file a petition for temporary legal custody of S.L.T.

since the order for temporary investigative authority was to expire on April 11, 1984.

At the contempt hearing on April 23, 1984, J.T. and L.T. requested that the contempt proceeding be vacated because they were not notified of the appointment. Their attorney stated that he had not advised them because he could not reach them. The judge issued a notice granting J.T. and L.T. time to reschedule their evaluations. On April 27, 1984, J.T. and L.T. filed a motion for substitution of judge. The motion was denied as untimely on April 30, 1984.

J.T. appeared for his evaluation as scheduled on May 2, 1984. However, the psychologist reported in a letter to the court that no evaluation was possible. To use the doctor's words:

> "Due to [J.T.'s] extreme defensiveness, threats to sue everyone involved in this case, including this psychologist, and his unwillingness to complete the required testing in a necessary fashion, it is my conclusion that no valid psychological evaluation can be accomplished at this time."

The hearing on the petition of temporary legal custody of S.L.T. was held on May 21, 1984. The State of Montana was represented by a Custer County Deputy Attorney, S.L.T. was present and represented by her counsel and guardian ad litem and J.T. and L.T. were present and represented by counsel.

The Judge concluded from the evidence presented that S.L.T. was an abused and neglected child and should be placed in the temporary custody of Custer County Welfare Department for six months. In addition, the judge incorporated a treatment plan designed by Custer County Welfare Department into the order that set out steps to help re-establish the parent/child relationship. The findings and conclusions issued on June 15, 1984 are the subject of this appeal by J.T. and L.T.

The issues raised by appellants are:

(1) Did the District Court err in finding S.L.T. was an abused and neglected child?

(2) Did the District Court err in awarding custody to Custer County Department of Public Welfare and in requiring that S.L.T., J.T. and L.T. follow a treatment plan set up by that department?

(3) Did the District Court incorrectly deny appellants' motion to disqualify Judge Martin?

This Court will not overturn a district court's decision in an abuse and neglect action unless there is a mistake of law or a finding of fact not supported by credible evidence that would amount to a clear abuse of discretion. Matter of C.M.S. (1979), 187 Mont. 115, 121, 609 P.2d 240, 243, citing In re G., Youths in Need of Care (1977), 174 Mont. 321, 325, 570 P.2d 1110, 1112. The findings in this case are amply supported by the record and no mistake of law was made. S.L.T.'s allegations of sexual abuse were believed to be truthful by all authorities who interviewed her and a psychological evaluation indicated that S.L.T. exhibited the characteristics of a sexually abused child and that she did not exhibit the symptoms found in individuals most likely to make such false allegations. This, along with S.L.T.'s testimony, is sufficiently clear evidence to support the findings of the trial court.

Section 41-3-404, MCA, gives the trial court authority to order any of the forms of relief listed in section 41-3-403(2), MCA, once the court determines that the youth is abused, neglected or dependent. The relief that may be ordered includes right of entry by a peace officer or social services worker; medical and psychological evaluation of the youth or parents; counseling services for the youth or parents; placement of the youth in a facility for protection;

5

other services to be furnished to the youth by the parents, guardian or custodian; and any other temporary disposition as may be required in the best interest of the youth. In this case, the trial judge found that S.L.T. should not be returned home under the present circumstances and should remain in the foster home where she was responding to control. In addition, the judge ordered S.L.T. and her parents to follow a treatment plan submitted by the county welfare department. The treatment plan had a stated goal of re-establishing the parent/child relationship and required S.L.T.'s parents to attend counseling sessions and to cooperate in receiving full psychological evaluations. The plan also required L.T., the mother, to keep regular appointments with a social worker and required L.T. and J.T. to present the other children for an appointment at the mental health center. Clearly, these are within the forms of relief the judge can order under sections 41-3-403 and 41-3-404, MCA. Thus the trial judge committed no error in ordering this relief.

Appellants contend that the treatment plan requires J.T. to admit guilt and that the welfare department has denied them contact with S.L.T. These contentions are without merit. One treatment goal seeks to reduce J.T.'s and L.T.'s denial of problems within their family and become informed about sexual abuse and another goal seeks evaluations of J.T. and L.T. There is no requirement of admitting guilt, only of recognizing that there are problems within the family unit.

As to appellants being denied contact with S.L.T., the record does not indicate they ever acknowledged the existence of S.L.T.'s guardian ad litem and counsel, much less contacted him about arranging a meeting. Appellants apparently did not give him notice of motions or appeals

filed and did not acknowledge his representative capacity in any documents. He was appointed by the court in September 1983 to serve on her behalf and appellants are obligated to deal with him rather than representatives of the county to request and arrange contact.

Appellants made one additional contention that is meritless. Section 41-3-202, MCA requires that an investigation be conducted by the county attorney, a peace officer or a social worker upon receipt of a report of abuse or neglect. The appellants contend that because the social worker did not visit the home the investigation was inadequate and presumably, that the orders made in this matter should be vacated. The record is replete with instances where J.T. and L.T. refused to cooperate with the welfare department. The investigation conducted covered all relevant and necessary matters as far as possible given their hostility and lack of cooperation. This Court will not hear appellants' complaint that the information missing as a result of their actions should be fatal to these proceedings.

We find that the District Court did not err in awarding custody of S.L.T. to Custer County and in ordering S.L.T., J.T. and L.T. to follow a treatment plan. The court acted on findings supported by the evidence on the sexual abuse and other problems present in the family. The court considered the results of an investigation by the police department and the information provided by others who investigated the problem. Appellants' contentions regarding the basis of this judgment are meritless.

The final issue concerns the motion to disqualify Judge Martin filed by appellants on April 30, 1984. The controlling statute on this issue, section 3-1-802, MCA, states:

> "Whenever a judge is assigned a case for ten consecutive days and the attorneys of record on both sides have knowledge of the assignment for that period of time, and if during this time no motion for substitution of a judge is filed against him, all rights to move for substitution of a judge shall be deemed waived by all parties, unless the presiding judge disqualifies himself thereafter in which case the right to move for substitution of a judge is reinstated and the ten-day period starts running anew." (Emphasis added.)

This case was initiated on September 20, 1983, with a petition for temporary investigative authority filed by the Custer County Attorney's Office. The initial pleadings at that time reflected that the case had been assigned to Judge Martin. Even assuming the petition for temporary legal custody filed April 11, 1984 was the start of a new case, the motion to disqualify made on April 27, 1984 is well past the ten-day time limit of section 3-1-802, MCA. Judge Martin properly denied the motion as not timely filed.

The decision of the District Court is hereby affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices